UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**EVEL JOHN ORTIZ,**

        **Plaintiff,**

v.                                                 **Case No:   6:15-cv-705-Orl-41GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Evel John Ortiz (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") in which he alleged a disability onset date of October 1, 2009. Doc. No. 1; R. 13. Claimant argues the Administrative Law Judge ("ALJ") erred by: 1) not weighing and/or crediting the opinions of his treating psychiatrist, Dr. Adly Thebaud; 2) finding his testimony concerning his pain and limitations not credible; and 3) not accounting for his carpal tunnel syndrome ("CTS") and ulnar neuropathy at steps four and five of the sequential evaluation process. Doc. No. 22 at 14-17, 21-25, 28. Claimant argues the matter should be reversed and remanded for further proceedings. *Id*. at 30. For the reasons that follow, it is **RECOMMENDED** the Commissioner's final decision be **AFFIRMED**.

I.     **STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II. ANALYSIS.

### A. Dr. Thebaud's Opinions.

The record contains two (2) opinions from Dr. Thebaud. R. 538-539. Claimant argues the ALJ failed to consider Dr. Thebaud's first opinion, and failed to account for the limitations contained in Dr. Thebaud's second opinion. Doc. No. 22 at 14-17. In addition, Claimant raises a separate but related argument concerning the ALJ's credibility determination. *Id*. at 28. Specifically, Claimant argues the ALJ's credibility determination is not supported by substantial evidence because the ALJ "failed to apply the correct legal standards" to Dr. Thebaud's opinions, which, Claimant maintains, support his testimony. *Id*. at 28.

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding;

or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

In 2007, Claimant began treating with Dr. Thebaud, who diagnosed him with major depression with psychotic features. R. 539. On June 10, 2009, prior to the alleged onset date, Dr. Thebaud authored a short letter in which he opined that "[d]ue to current medications, [Claimant] will be on an off work status until further notice." R. 538.

On August 22, 2011, law enforcement officers with the Volusia County Sheriff's Office transported Claimant to Stewart-Marchman-Act Behavioral Healthcare ("S-M") after he claimed he was being harassed and followed by undercover agents, and threatened to kill anyone involved in his purported surveillance. R. 439-40. On August 23, 2011, Claimant was involuntarily committed to S-M under the Baker Act, Fla. Stat. §§ 394.451-394.47891. *Id*. At that time, Claimant reported he was treating with Dr. Thebaud, and was currently prescribed Fluoxetine, Cogentin and Thiothixene. *Id*. The treating psychiatrist at S-M subsequently discontinued Thiothixene, and, instead, prescribed Risperdal, and later added Tegretol. *Id*. Claimant began showing signs of improvement, and was eventually discharged on August 29, 2011, with instructions to continue taking the medications prescribed during his commitment at S-M, which included, among others, Risperdal and Tegretol. *Id*.

On November 29, 2011, Dr. Thebaud authored a letter to Northeast Florida Health Services. R. 539. In it, Dr. Thebaud detailed Claimant's commitment to S-M, and Claimant's improvement after being prescribed Risperdal. *Id*. In light of Claimant's improvement, Dr. Thebaud strongly advocated that he be kept on Risperdal, opining that if it is prematurely

discontinued he "can become a significant threat to others." R. 539.[1]

The record reveals Claimant was not prescribed Risperdal after November of 2011. *See, e.g.*, R. 507-09, 511-13. In 2012, Dr. Thebaud examined Claimant on at least three (3) separate occasions, noting Claimant reported feeling stable and doing well, and continued to treat Claimant with Prozac and Tegretol. R. 507-09. On August 4, 2012, Dr. Najib Kirmani conducted a one-time psychiatric evaluation. R. 511-13. Dr. Karmani diagnosed Claimant with depressive disorder NOS, and opined Claimant is able to make some personal and social adjustments, and able to understand, remember and carry out instructions. *Id*.

At step two of the sequential evaluation process, the ALJ found Claimant suffers from a single severe mental impairment, major depressive disorder. R. 15. At step four of the sequential evaluation process, the ALJ found Claimant can perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following cognitive and social limitations:

> He is limited to perform work with little variation in tasks that would take a short period of time to learn (up to and including 30 days). He is able to relate adequately to coworkers and supervisors with occasional contact with the general public. He is able to deal with changes in a routine work setting.

R. 17.[2] In reaching this RFC determination, the ALJ's decision reveals he considered Claimant's testimony and conducted a thorough review of the medical record, including those records pertaining to Claimant's mental health treatment. R. 17-23.

---

[1] It appears the letter was intended to convince physicians at Northeast Florida Health Services, a community health center in Volusia County, Florida, to continue prescribing Risperdal to Claimant. *See* R. 539. Notwithstanding Dr. Thebaud's recommendation, it appears Risperdal was never approved. *See* R. 509.

[2] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

### 1. Dr. Thebaud's 2009 Opinion.

In June of 2009, Dr. Thebaud opined Claimant is unable to work due to his current medications. R. 538. The ALJ's decision reveals he considered the opinion, but did not expressly address or weigh the opinion. *See* R. 13-27. In light of the ALJ's silence, Claimant maintains the ALJ did not consider the 2009 opinion, which, he contends, supports a finding of disability. Doc. No. 22 at 15-16. As a result, Claimant argues the ALJ erred by neither considering nor weighing the 2009 opinion. *Id*.

The ALJ did consider the 2009 opinion – albeit not expressly mentioning it – when addressing Claimant's treatment history predating the alleged onset date. R. 18 (citing R. 538). In doing so, the ALJ did not weigh the opinion. *See* R. 13-27. However, the ALJ was under no obligation to weigh the opinion. The opinion does not contain any functional limitations. R. 538. Instead, the opinion addresses the ultimate issue reserved for the Commissioner, i.e., whether Claimant is disabled pursuant to the Social Security Act. R. 538; 20 C.F.R. §§ 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability"); 416.927(d)(1) (same). An opinion that merely opines that individual is unable to work is not a medical opinion. *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).[3] Therefore, the ALJ was not obligated to weigh the 2009 opinion because it is not a medical opinion. Further, even if the ALJ erred by not weighing the 2009 opinion, any such error is harmless because opinions addressing the ultimate issue of disability are not entitled to any special significance or weight, even if rendered by a treating physician. *Kelly*, 401 F. App'x at 407; SSR 96-5p, 1996

---

[3] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Accordingly, the undersigned finds the outcome of the case would not change if it were remanded to the Commissioner. *See, e.g.*, *Torres v. Astrue*, 2012 WL 621707, at *2 (M.D. Ga. Feb. 2, 2012) ("harmless error doctrine essentially dictates that if remand for the correction of an error would not change the outcome . . . such error is deemed harmless."). For these reasons, it is **RECOMMENDED** the Court reject Claimant's argument concerning Dr. Thebaud's 2009 opinion.

### 2. Dr. Thebaud's 2011 Opinion.

In November of 2011, following Claimant's treatment at S-M, where he was first prescribed Risperdal, Dr. Thebaud opined that if Risperdal is "prematurely" discontinued Claimant "can become a significant threat to others." R. 539.[4] The ALJ assigned this opinion "rather great weight" because "it is consistent with the remaining credible evidence that supports . . . the claimant has been managed well and [is] stable . . . with medications for his mental impairments." R. 24. Claimant does not challenge the weight assigned to the 2011 opinion. *See* Doc. No. 22 at 16-17. Instead, Claimant contends the ALJ did not properly account for the 2011 opinion in his RFC determination. *Id*. at 17. Specifically, Claimant maintains that since he did not continue taking Risperdal following the 2011 opinion, he, according to Dr. Thebaud, poses a significant threat to others. *Id*. As such, Claimant argues the ALJ's RFC determination conflicts with the 2011 opinion, because the ALJ, despite assigning "rather great weight" to the opinion, concluded Claimant can "relate adequately to coworkers and supervisors with occasional contact with the general public." *Id*.

---

[4] Dr. Thebaud's 2011 opinion clearly contemplates termination of Risperdal, but does not address when it may be appropriate to do so and appears to leave that decision to Northeast Florida Health Services. R. 539. Again, it appears Northeast Florida Health Services did not prescribe Risperdal. *See supra* n.1.

There is no conflict between the ALJ's RFC determination and the 2011 opinion. The 2011 opinion was premised on the belief that Claimant may pose a risk to others if Risperdal was prematurely discontinued. R. 539. The ALJ recognized this, but also properly considered medical and opinion evidence post-dating the 2011 opinion, including treatment notes from Dr. Thebaud and Dr. Kirmani's psychological examination report. R. 24 (citing R. 507-09, 511-13). This more recent evidence reveals Claimant's mental impairment was well managed by medication other than Risperdal, and contains no opinions suggesting that Claimant poses a threat to others. R. 507-09, 513.[5] The ALJ considered the entire record, and noted that since the 2011 opinion Claimant's "overall mental health treatment records show that he has been stable with medication management with relatively unremarkable mental status exam findings[.]" R. 24 (citing R. 507-09). Thus, the ALJ determined that Claimant's mental impairment was well managed with medications other than Risperdal and credited Dr. Thebaud's opinion to the extent it was consistent with the other medical and opinion evidence confirming Claimant's mental impairment was well managed by medication. R. 24. The ALJ's findings are supported by substantial evidence. Accordingly, it is **RECOMMEDNED** the Court reject Claimant's argument concerning Dr. Thebaud's 2011 opinion.

### 3. Credibility.

The ALJ found Claimant's testimony concerning the intensity, persistence and limiting effects of his symptoms not entirely credible, and articulated several reasons in support of that finding. R. 23-24. Claimant challenges the ALJ's credibility determination, but does not challenge any of the reasons the ALJ articulated in support his credibility determination. *See* Doc. No. 22 at 28. Instead, Claimant argues the ALJ's credibility determination is not supported by

---

[5] Indeed, there is no evidence Claimant was a threat to or threatened anyone after 2011.

substantial evidence because the ALJ "failed to apply the correct legal standards" to Dr. Thebaud's opinions, which, Claimant maintains, support his testimony. *Id*. Thus, Claimant's argument is dependent upon the success of the preceding arguments concerning Dr. Thebaud's 2009 and 2011 opinions. The undersigned concluded the ALJ committed no error with respect to Dr. Thebaud's 2009 and 2011 opinions. *See supra* pp 6-8. Therefore, Claimant's argument challenging the ALJ's credibility determination is unavailing. Accordingly, it is **RECOMMENDED** the Court reject Claimant's argument concerning the ALJ's credibility determination.

### B. CTS and Ulnar Neuropathy.

The Claimant's final argument centers on the ALJ's consideration of his CTS and ulnar neuropathy. Doc. No. 22 at 21-25. Claimant argues the record demonstrates his CTS and ulnar neuropathy cause limitations regarding the use of his hands that the ALJ failed to include and/or account for in his RFC determination and hypothetical to the vocational expert ("VE"). *Id*. at 23-25. Accordingly, Claimant argues the ALJ's decision is not support by substantial evidence. *Id*. at 25.

On May 10, 2010, Claimant began treating with Dr. Jeffrey Corak, a neurologist, in part, due to complaints of pain in his hands and upper extremities. R. 462-63. On May 24, 2010, Claimant underwent a nerve conduction study of his upper extremities, which revealed he suffers from bilateral median neuropathy at/or distal to the wrist, and bilateral ulnar neuropathy at the elbow. R. 459-60. On June 7, 2010, Dr. Corak asked Claimant to begin wearing wrist splints while he sleeps and to "avoid pressure over the elbows[.]" R. 458. Claimant continued to treat with Dr. Corak through June 1, 2012. R. 451-58.

At the hearing, Claimant testified he experiences various issues with his upper extremities. Specifically, Claimant testified he experiences numbness and stiffness in his fingers, which makes

it difficult to pick up small objects. R. 43, 46. Claimant testified he experiences weakness in his hands, which makes it difficult to grasp objects, and was advised to avoid sitting with his hands down to his sides and using his hands to stand. R. 45-47.[6] Claimant also testified he experiences a twitching sensation in his left elbow. R. 45.

At step two of the sequential evaluation process, the ALJ found Claimant suffers from the following severe physical impairments: osteoarthritis of the right acromioclavicular ("AC") joint; degenerative disc disease of the cervical and lumbar spine with radiculopathy; right carpal tunnel syndrome; left rotator cuff syndrome; obesity; ulnar neuropathy; and degenerative joint disease of the left knee. R. 15. At step four of the sequential evaluation process, the ALJ found Claimant can perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional physical limitations:

> [Claimant requires a] 30 minute sit/stand option [and is] limited to occasional postural activities. He should not be required to engage in overhead reaching. He should not have concentrated exposure to vibrations.

R. 17. In reaching this RFC, the ALJ considered Claimant's testimony and Dr. Corak's treatment records, and found, in relevant part, Claimant's osteoarthritis of the right AC joint, CTS, left rotator cuff syndrome, obesity, and ulnar neuropathy preclude him from reaching overhead and having concentrated exposure to vibrations. R. 18-21, 23-24.

The ALJ clearly considered and accounted for Claimant's CTS and ulnar neuropathy by finding Claimant is unable to reach overhead and have concentrated exposure to vibrations. R. 18-21, 23-24. Claimant does not contest these limitations. *See* Doc. No. 22 at 21-25. Instead, Claimant argues these limitations do not fully account for all the limitations caused by his CTS

---

[6] Claimant testified that "the specialist . . . [he] was seeing for [his] carpal tunnel" advised him to avoid sitting with his hands down to his sides and using his hands to stand. R. 45. It appears Claimant is referring to Dr. Corak. However, Dr. Corak's treatment notes do not contain any such recommendations. *See* R. 451-63.

and ulnar neuropathy. Doc. No. 22 at 23-24. Specifically, Claimant, relying on his testimony and Dr. Corak's treatment records, maintains his CTS and ulnar neuropathy also cause numbness, tingling, weakness, cramping, stiffness, and preclude him from sitting with his hands down to his sides, using his hands to stand up, and resting on his elbows. *Id*. at 22-23 (citing R. 43, 45-47, 451-60). Accordingly, Claimant argues the ALJ should have, but failed to, include these limitations in his RFC determination and hypothetical to the VE. *Id*. at 22-23.

The undersigned finds Claimant's argument unavailing for three (3) principle reasons. First, many of the "limitations" allegedly caused by Claimant's CTS and ulnar neuropathy are not functional limitations, but are symptoms of Claimant's impairments: to wit, numbness, tingling, weakness, cramping, and stiffness. The presence of these symptoms do not reveal the extent to which Claimant's ability to perform work-related functions is limited. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (explaining the mere existence of an impairment does not reveal the extent to which that impairment limits a claimant's ability to perform work-related functions). Thus, the inclusion of the symptoms in the RFC would provide no further insight into Claimant's ability to perform work-related functions. Further, Claimant points to no medical or opinion evidence indicating that these symptoms cause any work-related functional limitations. *See* Doc. No. 22 at 21-25; *see Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (claimant bears the burden of proving his or her disability). In light of the foregoing, the undersigned finds the ALJ was not required to include any of the foregoing symptoms in his RFC determination.

Second, Claimant's testimony does not support the inclusion of additional functional limitations. The ALJ found Claimant's testimony concerning the intensity, persistence and limiting effects of his symptoms not entirely credible, and articulated several reasons in support of that finding. R. 23-24. The undersigned previously determined Claimant's limited challenge of

the ALJ's credibility determination unavailing, *see supra* pp. 8-9, and Claimant has raised no other arguments challenging the ALJ's credibility determination. Therefore, in light of the ALJ's credibility determination, which is supported by substantial evidence, the undersigned finds the ALJ was not required to include the symptoms and limitations Claimant identified during the hearing in his RFC determination.

Third, the ALJ considered Dr. Corak's treatment records, particularly those containing a recommendation that Claimant avoid "pressure over the elbows[.]" R. 19 (citing R. 458). Claimant argues the ALJ should have included and/or accounted for this recommendation in his RFC determination. Doc. No. 22 at 23. The undersigned in not persuaded. The ALJ was not required to include Dr. Corak's recommendation in his RFC determination. 20 C.F.R. §§ 404.1546(c); 416.946(c). Further, Claimant does not explain how the ALJ should have accounted for this recommendation (*see* Doc. No. 22 at 21-25), a deficiency which likely stems from the indefinite nature of the recommendation, which provides no clear limits on how much pressure (if any) Claimant can place over his elbows and the amount of time, if any, that Claimant can place "pressure over the elbows[.]" Ultimately, the ALJ properly considered the record as a whole, and determined Claimant's impairments, including his CTS and ulnar neuropathy, which gave rise to Dr. Corak's recommendation (*see, e.g.*, R. 458), limit Claimant's ability to reach overhead and tolerate concentrated exposure to vibrations. R. 24. On this record, the undersigned finds no errors in the ALJ's RFC finding as to the consideration of and accounting for Claimant's CTS and ulnar neuropathy.[7] Accordingly, it is **RECOMMENDED** the Court reject Claimant's argument

---

[7] In addition to advocating for additional limitations, Claimant also argues the overhead reaching limitation does not account for his hand limitations, but only accounts for his shoulder limitations. Doc. No. 22 at 23-24. As previously mentioned, Claimant has failed to demonstrate that the ALJ should have included and/or accounted any of the hand limitations he identifies in the joint brief (e.g., weakness, numbness, the inability to use his hands to stand up). *See supra* pp. 10-13. Further, the ALJ did include an impairment which reasonably relates to Claimant's CTS and ulnar neuropathy, i.e., avoidance of concentrated exposure to vibrations, which Claimant does not challenge on appeal as

concerning the ALJ's consideration of his CTS and ulnar neuropathy.

## III.    CONCLUSION.

For the reasons stated above, it is **RECOMMENDED** the Court:

1. **AFFIRM** the final decision of the Commissioner; and

2. Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant, and close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 25, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

being insufficient to account for the limitations caused by his CTS and ulnar neuropathy. R. 24; Doc. No. 22 at 21-25. Accordingly, the undersigned finds Claimant's foregoing argument unavailing.